UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Marcus Antonio Frierson, # 247864, | ) C/A No.  4:09-1314-DCN-TER |
| Plaintiff, | ) |
| vs. | ) REPORT AND RECOMMENDATION |
| Dr. E. Stahl; LPN, M. Brady; LPN, C. Dixon | ) |
| Defendant. | ) |

## I. PROCEDURAL BACKGROUND

The plaintiff, Marcus Antonio Frierson, filed this action on May 20, 2009, alleging various claims for violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] Defendants filed a motion for summary judgment on December 2, 2009, along with a memorandum, affidavits and exhibits. (Doc. #31). The undersigned issued an order filed December 3, 2009, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir.1975), advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately. Plaintiff filed a response. Defendants filed a reply and plaintiff filed an additional reply.

Plaintiff filed a motion for summary judgment on January 5, 2009. (Doc. #19). Defendants filed a response in opposition on December 2, 2009. (Doc. #32).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the district judge.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

In the complaint, plaintiff alleges that defendants violated his constitutional rights while he was housed at Lee Correctional Institution (LCI). Plaintiff asserts that he was placed on a diet that contained no meat, rice, and grits. Plaintiff contends he is allergic to rice and grits which cause his face to swell, and he develops whelps and "causes very bad pain in my face and head, and stomach area as well as chest." (Complaint, doc. #1). Plaintiff alleges that defendant Nurse Dixon took him off of the diet even though Dr. Stahl had placed him on the diet because defendant Dixon stated plaintiff was taking cake and bread from officers. (Id.). Plaintiff argues he was allergic to rice and grits not cake and bread. Plaintiff alleges that he was not served his diet tray for a "few days" so that he was forced to eat rice and grits which caused him pain and facial swelling. (Id.). After complaining, plaintiff contends the officers called medical but they refused to come see him but told the officers to give him ice and "IBP." (Id.). Plaintiff contends Nurse Brady and another nurse came to examine his face when they came to deliver medication, and they placed him on the list to see the dentist the next morning. (Id.). Plaintiff asserts he tried to explain to the nurses to call the doctor because he was not supposed to have rice and grits and that he went four days without eating. (Id.). The dentist found nothing wrong with his teeth but did state he had a problem with his salivary duct "and it comes from eating certain foods." (Id.). Plaintiff asserts they sent him to see Dr. Stahl who looked at his medical record and recalled he put him on the special diet and stated he would re-order it. (Id.). Plaintiff asserts that because of medical indifference, he suffered with a swollen face and pain and suffering. Plaintiff requests monetary damages in the amount of $3.5 million dollars.

Defendants filed a motion for summary judgment asserting plaintiff fails to state a claim, Dr.

Stahl is now deceased, any claims are barred by qualified immunity and Eleventh Amendment immunity, plaintiff cannot show that his dietary problems were serious or life-threatening and that defendants were deliberately indifferent to his health or safety, defendants cannot be held liable based on a respondeat superior or vicarious liability theory, and plaintiff has failed to produce any expert testimony linking any alleged injury to any alleged conduct.

## B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case

3

makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C. MEDICAL INDIFFERENCE

As previously stated, plaintiff argues that the doctor placed him on a special diet which one of the nurses took him off of causing him to eat rice and grits resulting in an allergic reaction including a swollen face and pain.

Defendants filed a motion for summary judgment along with a memorandum and affidavits. Defendants submitted the affidavit of Nurse Y. McDonald ("McDonald") who attests that she is a registered nurse and Nursing Supervisor at LCI where she reviews inmate medical records. (McDonald affidavit, doc. #31-2). McDonald attests that plaintiff had in excess of 743 visits to the clinic since his incarceration at the SCDC in 1998 and received generally accepted medical care by the SCDC medical staff. (Id.). Dr. E. Stahl died in June 2009, and Nurse McDonald has reviewed plaintiff's medical records. There were no medically indicated dietary restrictions on plaintiff's consumption of rice and grits by Dr. Stahl. (Id.). There were self-described allergic complaints to grits and rice by plaintiff but no medical indication of an allergy. (Id.).On all occasions that plaintiff complained of allergic reaction, his vital signs were taken and there was no shortness of breath, and systemic swelling, swelling of the tongue, swelling of the mouth, his blood pressure was stable, his

4

respiration and pulse were within normal limits.(Id.). There were no notes of allergic complaints by plaintiff until 2009. (Id.). Plaintiff reported eating bread, peanut butter, and cake during 2009 without complaint of an allergic reaction. (Id.). Plaintiff alleged that he has an allergy to starch and grits but rice, bread, and cake are all starches. (Id.). If plaintiff can eat bread, biscuits, and cake, then he is not allergic to starch. (Id.). From 1998-2008, plaintiff tolerated a diet of starches and consumed rice and grits without adverse effect. (Id.). McDonald attests that she did note that plaintiff desired a vegetarian diet and this diet was not medically indicated but could be approved for religious reasons by the clergy at LCI, and the medical staff at LCI saw no medical reasons why plaintiff could not be on a vegetarian diet if approved by the clergy or chaplain. (Id.). If plaintiff was having an allergic reaction to rice and grits, one would expect to see a more systematic reaction causing respiratory distress, edema of his throat, swelling of the tongue, swelling of the mouth, elevated blood pressure, elevated respiration, and elevated pulse. (Id.). At best, a localized reaction around the lips or mouth would be noted and none of this was described by plaintiff. (Id.).There was no systemic reaction noted in any of his medical records nor any respiratory distress. (Id.). McDonald attests that she finds no medical basis that plaintiff has a food allergy and is of the opinion that he received appropriate medical care by the medical staff at the SCDC. (Id.).

Defendants submitted the affidavit of Nurse C. Dixon ("Dixon") who attests that she is a licensed practical nurse employed by the SCDC at LCI and has seen plaintiff during the year 2009 on several occasions when he reported to the clinic. (Dixon affidavit, doc. #31-2). On the occasions Dixon saw plaintiff, she took his vital signs to include respiratory rate, temperature, pulse, blood pressure, and weight. (Id.). On each occasion Dixon saw plaintiff, his vital signs were within normal limits with the exception of a slightly elevated blood pressure on several occasions for which he was taking blood pressure medication. (Id.). Dixon only documented what plaintiff related to her and any

orders regarding his treatment or care are made by a medical doctor, and on no occasions, did she restrict plaintiff's diet. (Id.). Dixon attests that she used generally accepted nursing standards when treating the plaintiff. (Id.).

In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). The court stated:

> An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. . . . We therefore conclude that deliberate indifference to serious medical needs of a prisoner constitutes the "unnecessary and wanton infliction of pain," Gregg v. Georgia, supra, at 173, (joint opinion), proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

Estelle, 429 U.S. at 103-105. (Footnotes omitted)

Despite finding that "deliberate indifference to serious medical needs" was unconstitutional, the court was careful to note, however, that "an inadvertent failure to provide adequate medical care" does not meet the standard necessary to allege an Eighth Amendment violation:

> . . . a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

Estelle, 429 U.S. at 107.

The Court of Appeals for the Fourth Circuit has also considered this issue in the case of Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). In that case, the court noted that treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness (citation omitted), . . . nevertheless, mere negligence or malpractice does not violate the Eighth Amendment." Id. at 851. Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986).

Further, incorrect medical treatment, such as an incorrect diagnosis, is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra. Negligence, in general, is not actionable under 42 U.S.C. § 1983. See Daniels v. Williams, 474 U.S. 327, 328-36 & n. 3 (1986); Davidson v. Cannon, 474 U.S. 344, 345-48 (1986); Ruefly v. Landon, 825 F.2d 792, 793-94 (4th Cir.1987); and Pink v. Lester, 52 F.3d 73, 78 (4th Cir. 1995) (applying Daniels vs. Williams and Ruefly v. Landon: "The district court properly held that Daniels bars an action under § 1983 for negligent conduct."). Secondly, 42 U.S.C. § 1983 does not impose liability for violations of duties of care arising under state law. DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 200-03 (1989). Similarly, medical malpractice is not actionable under 42 U.S.C. § 1983. Estelle v. Gamble, supra, at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.") See also Brooks v. Celeste, F. 3d 125 (6th Cir. 1994) (Although several courts prior to the Supreme Court's decision in Farmer v. Brennan, supra, held that "repeated acts of negligence could by themselves constitute deliberate indifference, Farmer teaches otherwise."); Sellers v. Henman, 41 F.3d 1100, 1103 (7th Cir. 1994) ("If act A committed by the X prison shows

7

negligence but not deliberate indifference, and B the same, and likewise C, the prison is not guilty of deliberate indifference."); White v. Napoleon, 897 F.2d 103, 108-109 (3rd Cir. 1990); and Smart v. Villar, 547 F.2d 114 (10th Cir. 1976) (affirming summary dismissal).

Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice." Jackson v. Fair, 846 F. 2d 811, 817 (1st Cir. 1988). Although the provision of medical care by prison officials is not discretionary, the type and amount of medical care is discretionary. See Brown v. Thompson, 868 F. Supp. 326 (S.D.Ga. 1994). Further, a disagreement as to the proper treatment to be received does not in and of itself state a constitutional violation. See Smart v. Villar, 547 F. 2d 112 (10th Cir. 1976); Lamb v. Maschner, 633 F. Supp. 351, 353 (D.Kan. 1986). Mistakes of medical judgment are not subject to judicial review in a § 1983 action. Russell v. Sheffer, 528 F. 2d 318, 319 (4th Cir. 1975).

Defendants did not submit any medical records with their memorandum or affidavits. Attached to plaintiff's complaint and response to summary judgment were some medical records and requests to staff members. A review of these documents submitted by plaintiff reveals that plaintiff submitted an "Outpatient Pre-Operative Physician's Form" from Palmetto Richland dated October 12, 2001, that notes "don't put rice or grits on tray allergic." (Doc. #35-2). Plaintiff also submitted a paper noting directions concerning diet for he and two other inmates with directions that he is on a regular diet but "inmate is allergic to Grits & Rice." (Doc. #35-3). However, there is no date on the form and does not reveal the origin of the form. Plaintiff also submitted a form dated April 12, 2002, labeled "Physician's transfer note or consultation" which is signed by a physician (name not legible) that states the following:

> Special Order: this inmate is not to have any rice or grits at any time it will cause serious health problems, will swell the tongue and face and will close air passage for breathing and swell ear. Recommendation: sub: rice & grits for cereal & peanut butter and meat at lunch and dinner along with (3) mighty shakes.

(Doc. #35-5).

Plaintiff filed a motion for summary judgment and attached a copy of some medical records. A review of these medical records reveal that on March 9, 2009, encounter #682, it was noted that plaintiff is on "vegetarian diet, but rice and grits cause swelling of my face and mouth" (doc. #19-1). It also stated he has hypertension, "vegetarian diet without rice and grits" and that the "pillroom and diet" would be informed. (Id.). Encounter #685 on March 20, 2009, states the following:

> Ofc Scarbough called stating I/M took BP meds on an empty stomach this AM after refusing breakfast tray. He then vomited on floor of cell. He is also C/O having H/A and chest pain. I/M is on a no starch diet *(states it causes him to have welps). Ofc. States he takes biscuits, peanut butter and cake from her daily. She has given I/M 3 biscuits, peanut butter and cake already this AM. Inst. Ofc to give I/M Maalox and monitor. Also please monitor what food he take/refuses the rest of the day so I can document.

(Id.).

Encounter #691 from the doctor's clinic on March 30, 2009, reveals that plaintiff ate rice and his face "swelled up" and the dental x-rays were normal. The dental encounter, #693, on March 30, 2009, reveals that inmate had some facial swelling upper right cheek and that it was "possible salivary duct clogged, could be due to diet." (Id.). Encounter #691, also states that there is a diet problem, that he "should be on vegetarian diet with no rice or grits but may eat bread and peanut butter." (Id.). This encounter also states "contact dietary and be sure he is on the correct diet." (Id.). This encounter was signed off on March 30, 2009, by Dr. Edward Stahl.

Plaintiff also attached a copy of his "Request to Staff Member" to Dr. Stahl dated March 28, 2009, in which he complains that the diet of no rice and grits and to add bread and peanut butter that

Dr. Stahl placed him on was cancelled by the nurse and "now all I get is rice & grits and I'm allergic to such, and my face, tongue is swollen and my ear drum, I need to be seen in your office because Nurse Brady and Dixon stated that I will get rice and grits and they don't care what happens, they are now acting with bad faith and is intentionally doing so with malice. . . " (Doc. # 38-2). The response from Dr. Stahl on March 30, 2009, was as follows:

> Mr. Frierson, I have talk with both nurses and this will not happen again,. I'm sorry that your[sic] in pain from this, I will have you place back on your diet today, and you will be seen by dental. I understand you are allergic to rice, grits. I have contacted dietary. Sorry Sir.

(Id.).

Based on the evidence before the court as discussed above, plaintiff has provided evidence that in April 2002, a doctor noted that plaintiff was to be on a diet of no rice and grits at any time because it "will cause serious health problems."(Doc.#35-5). Therefore, a doctor noted that plaintiff was not to receive rice and grits. Further, a report signed by Dr. Stahl on March 30, 2009, as discussed above, states that he had talked with the nurses and would have him "place[d] back on your diet today." (Doc. #38-2). Defendants have not submitted any medical records of plaintiff. Therefore, whether defendants acted maliciously and sadistically to cause harm to plaintiff by removing him from a special diet that they knew or had reason to believe may cause him harm is a fact disputed by the parties. The issue requires additional evidence and/or credibility determinations not appropriate for resolution on the record before the court. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## III. CONCLUSION

For the reasons stated herein, it is RECOMMENDED that the defendants' motion for summary judgment (doc. #31 ) be DENIED.

IT IS FURTHER RECOMMENDED that plaintiff's motion for summary judgment (doc.#19) be DENIED.

Respectfully Submitted,

s/Thomas E. Rogers, III
Thomas E. Rogers, III
United States Magistrate Judge

June 23, 2010
Florence, South Carolina

The parties' attention is directed to the important notice on the next page.